██████████

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

| | |
|---|---|
| GEMINI TECH SERVICES, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. _____ |
| v. ) | Judge _____ |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## BID PROTEST COMPLAINT

Plaintiff Gemini Tech Services, LLC ("Gemini"), as for its Complaint against Defendant United States of America, alleges as follows:

### NATURE OF THE ACTION

1. This complaint challenges the Army's decision to override the statutory stay of performance required by the Competition in Contracting Act ("CICA") in connection with Gemini's pending bid protest at the U.S. Government Accountability Office ("GAO"), which is docketed as B-423775.1.[1]

---

[1] Gemini's bid protest is subject to a protective order issued by GAO, and this Complaint and the accompanying Motion for a Preliminary Injunction use material that is covered by GAO's protective order. We are filing a Motion for a Protective Order at the Court along with our Complaint and Motion for a Preliminary Injunction.

██████████

2. The procurement at issue seeks a contractor to construct, operate, and maintain a new 5,000-capacity short-term detention facility at Fort Bliss, Texas, for single adults awaiting immigration proceedings or removal from the United States.

3. The base period is just three months long, and in that period the contractor will construct the facility, achieve initial operating capacity for 1,000 detainees, and continue to expand at a rate of 250 detainees per week.

4. Consequently, without the CICA stay, the facility will be built and operational before GAO's November 5, 2025 deadline for issuing a decision on the merits of Gemini's protest.

5. The Army awarded the task order at issue to Acquisition Logistics LLC ("ALL") on July 18, 2025, and Gemini filed its GAO protest on July 28, 2025, thereby triggering the statutory stay under CICA.

6. At that point, CICA required the contracting officer to "immediately direct the contractor to cease performance under the contract[.]" 31 U.S.C. § 3553(d)(3)(A)(ii).

7. Instead of doing that, the Army "immediately" determined the protest was meritless and gave an "oral" direction to continue performance under ALL's task order.

8. Under CICA and the Army Federal Acquisition Regulation Supplement ("AFARS"), the Army could override the stay only after executing a written determination and notifying GAO, *see* 31 U.S.C. § 3553(d)(3)(C); AFARS 5133.104(c)(2), but the Army proceeded with performance without doing either of those things.

9. The Army eventually notified GAO of its decision three days later on July 31, 2025; executed a determination and findings ("D&F") on August 1, 2025; and filed the D&F with GAO the following week on August 4, 2025.

10. The D&F purports to examine the four factors required by the AFARS (which are the same four factors discussed in *Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. 705, 711 (2006)), but it repeatedly fails to consider important aspects of the problem and reaches conclusions that run counter to the evidence and are unsupported.

11. For these reasons, and as explained in more detail below, the Court should rule in Gemini's favor; declare the Army's override of the CICA stay to be arbitrary and capricious; and enjoin continued performance under the awarded task order for the duration of Gemini's GAO protest, consistent with the required CICA stay.

## JURISDICTION

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1491(b).

13. The Court has jurisdiction over challenges to a CICA stay override even when the stay override is in connection with the award of a task order. *See, e.g., Technica LLC v. United States*, 142 Fed. Cl. 149, 153 (2019) (exercising jurisdiction over challenge to CICA stay override on task order award); *Intelligent Waves, LLC v. United States*, 137 Fed. Cl. 623, 625 (2018) (same).

14. Gemini is an actual offeror that submitted a proposal in response to the solicitation and whose direct economic interest is affected by the award to ALL. Gemini therefore has standing to sue as an interested party pursuant to 28 U.S.C. § 1491(b).

3

## PARTIES

15. Gemini provides professional and technical labor services solutions to the government services sector. It maintains offices at 5019 E. I20 Frontage Road, Willow Park, Texas 76087.

16. Defendant is the United States of America, acting by and through the Army as the contracting agency.

17. ALL, the awardee, is a government contractor that maintains offices at 502 Branway Dr., Henrico, Virginia 23229.

## FACTUAL ALLEGATIONS

### I. The Underlying Procurement

#### A. Nature of the Procurement

18. On June 11, 2025, the Army published a Request for Task Order Proposals ("RTOP") to establish and operate an immigration detention facility under the WEXMAC 2.0 indefinite delivery indefinite quantity contract.

19. The RTOP sought a contractor to establish and operate a soft-sided facility ("SSF") at Fort Bliss, El Paso, Texas, for the short-term housing of single-adult detainees in the custody of Immigration and Customs Enforcement ("ICE").

20. The facility being procured under the RTOP will replace an existing incumbent facility in El Paso known as the El Paso Enhanced Hardened Facility.

21. During the approximately 90-day base period, the awardee must construct the SSF, reach initial operating capacity of 1,000 beds, and continue to scale at a rate of 250 beds per week until reaching maximum capacity of 5,000 beds.

22. The awardee is responsible for designing, constructing, equipping, staffing, operating, and maintaining the facility.

23. The RTOP was set aside for small businesses and contemplated award of a firm fixed price contract for a base period of three months and two year-long option periods.

24. The RTOP was preceded by an earlier request for proposals issued on March 21, 2025 by ICE, which was for the same detention facility and associated services now addressed in the RTOP.

25. ICE awarded that earlier contract to Deployed Resources LLC on April 10, 2025; terminated the contract for convenience and issued a notice of corrective action to all offerors on April 13, 2025; and canceled the solicitation on May 2, 2025.

**B.   The RTOP's Evaluation Scheme**

26. The RTOP provided for a two-phase selection process.

27. In Phase One, the Army would evaluate two factors: (1) Initial Site Design (35%); and (2) Past Performance.

28. Based on its evaluation of those two factors, the agency would then establish a competitive range consisting of the top five proposals deemed most advantageous to the government.

29. The RTOP provided that Past Performance would be "more relevant" than Initial Site Design (35%). Thus, Past Performance was the most important consideration in Phase One.

30. The RTOP provided that Phase Two would be conducted on a lowest price, technically acceptable basis.

31. In Phase Two, the Army would evaluate six factors: (1) Final Site Design (95%); (2) Mobilization Plan; (3) Demobilization Plan; (4) Staffing Plan; (5) Performance Work Statement; and (6) Price.

32. To be eligible for award, an offeror's proposal had to receive an "Acceptable" rating in all non-price factors.

33. In addition to the technical evaluation, the Army would evaluate each offeror's price for reasonableness, balance, and completeness/accuracy.

C. **Gemini's Proposal**

34. Gemini is eligible to bid on the RTOP as a U.S. Small Business Administration ("SBA")-certified 8(a) Small Disadvantaged Business (SDB) under SBA's 8(a) Business Development Program and also an SBA-certified Economically Disadvantaged Woman-Owned Small Business / Woman-Owned Small Business (EDWOSB/WOSB). Gemini has two years remaining in the SBA set-aside program.

35. Gemini's Phase One proposal, consistent with the RTOP instructions, consisted of two volumes: Initial Site Design (35%) and Past Performance.

36. In Volume I, Initial Design, Gemini [REDACTED]

37. In Volume II, [REDACTED]

6

38. Gemini's Phase Two proposal consisted of the remaining five volumes: Final Site Design (95%), Staffing Plan, Mobilization and Demobilization, Performance Work Statement, and Price. ▮▮▮

39. Gemini's price volume provided an overall total price of $▮▮▮.

**D. The Agency's Evaluation and Award Decision**

40. The agency received 13 proposals for Phase One.

41. Following a tradeoff evaluation of the Initial Site Design and Past Performance volumes of those 13 proposals, the agency established a competitive range of five offerors — including Gemini and ALL — eligible for consideration in Phase Two.

42. Only four of those five offerors submitted Phase Two proposals.

43. During Phase Two evaluations, the evaluation team rated both Gemini and ALL as "acceptable" across all four technical factors.

44. The offeror that submitted the lowest price was assessed as technically unacceptable and therefore ineligible for award.

45. ALL's next-lowest price of $1,238,567,966.42 was determined to be fair and reasonable.

46. The agency issued a notice to proceed to ALL on July 15, 2025; conducted Final Site Design Approval on July 16-18, 2025; notified unsuccessful offerors on July 17, 2025; and awarded the task order to ALL on July 18, 2025.

7

47. Gemini timely requested a post-award debriefing, which concluded on July 23, 2025.

## II. Gemini's GAO Protest and the Army's CICA Override

48. Gemini filed its protest at GAO on July 28, 2025, within ten days of contract award and within five days of the conclusion of its debriefing.

49. GAO notified the Army of Gemini's protest that same afternoon.

50. The Army did not implement the CICA stay in response to Gemini's protest.

51. According to the D&F, "[u]pon receipt of the protest, the [Head of the Contracting Activity ('HCA')] reviewed the relevant facts and merits of the protest, and made an immediate determination that it was in the best interests of the United States to proceed with performance under the contract."

52. The HCA then "orally authorized contract performance."

53. Three days later, on July 31, 2025, the Army notified GAO that it was not implementing the stay and attached a "Memorandum for Record," also dated July 31, 2025, authorizing continued performance of the task order under protest.

54. Four days later, on August 4, 2025, the Army filed its D&F with GAO, which is dated August 1, 2025.

55. The D&F considers the four factors required under AFARS 5133.102(b)(1)(A) and set out in *Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. 705, 711 (2006): "[W]hether significant adverse consequences will necessarily occur if the stay is not overridden"; "whether reasonable alternatives to the override exist that will adequately address the circumstances presented"; "how the potential cost of proceeding with the override, including the

costs associated with the potential that the GAO might sustain the protest, compare to the benefits associated with the approach being considered for addressing the agency's needs"; and "the impact of the override on competition and integrity of the procurement system."

56. Under the first factor, the D&F makes generalized assertions that implementing the stay would "hinder" the agency and "disrupt" ICE's enforcement activities.

57. Under the second factor, the D&F states that no reasonable alternatives exist.

58. Under the third factor, the D&F states that the cost of implementing the stay will be $▮ million, while the cost of an override will be $▮ million.

59. Under the fourth factor, the D&F states that if GAO sustains Gemini's protest, "the Army will consider GAO's decision." It further states that "transitioning performance to a new vendor would present significant logistical and operational challenges."

### III. The El Paso Enhanced Hardened Facility

60. Deployed Resources currently operates the El Paso Enhanced Hardened Facility ("EHF").

61. The El Paso EHF is the incumbent short-term SSF in El Paso, Texas, for single-adult detainees in ICE custody.

62. U.S. Customs and Border Protection ("CBP") first awarded the EHF task order to Deployed Resources on December 15, 2022, with a period of performance through March 29, 2025.

63. When the final option period under the CBP task order expired, the Army awarded a follow-on sole source task order to Deployed Resources on March 29, 2025.

64. The sole source task order has available option periods through September 25, 2025, plus an available six-month extension under FAR 52.217-8.

65. ■■■■■■■■■■■■■■■■■■■■■■■■

66. The original El Paso EHF task order required facilities and support services for a maximum capacity of 1,000 detainees.

67. ■■■■■■■■■■■■■■■■■■■■■■■■

68. The sole source El Paso EHF contract was awarded with an original maximum capacity of 2,500 detainees.

69. ■■■■■■■■■■■■■■■■■■■■■■■■

70. ■■■■■■■■■■■■■■■■■■■■■■■■

71. ■■■■■■■■■■■■■■■■■■■■■■■■

72. ■■■■■■■■■■■■■■■■■■■■■■■■

73. ■■■■■■■■■■■■■■■■■■■■■■■■

10

## STANDARD OF REVIEW

74. "When an agency overrides a CICA stay, the Court reviews that decision pursuant to the standards established by the [Administrative Procedure Act], 5 U.S.C. § 706." *Technica*, 142 Fed. Cl. at 153.

75. Under that standard, the Court considers whether the agency's decision to override the CICA stay was arbitrary and capricious. *See id.* at 153-54 (citing *RAMCOR Servs. Grp., Inc. v. United States*, 185 F.3d 1286, 1290 (Fed. Cir. 1999)).

76. In determining whether to grant a preliminary or permanent injunction, the Court considers four factors: (1) the likelihood of success on the merits; (2) whether the plaintiff will suffer irreparable harm without an injunction; (3) the balance of harms to the parties; and (4) the public interest. *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004).

77. A number of decisions of the Court have concluded that, "upon finding that an agency override determination lacks validity," it is not necessary to consider the traditional injunctive relief factors in order "to reinstate the statutory stay applicable during the GAO protest period" because "Congress did not require any evaluation of injunctive relief factors as a prerequisite to a stay of contract performance upon the filing of a protest with the GAO." *E.g.*, *Technica*, 142 Fed. Cl. at 156 (citing *Chapman Law Firm Co. v. United States*, 65 Fed. Cl. 422, 424 (2005)).

███

## CLAIM FOR RELIEF

### I. Count One: The Agency's Override of the CICA Stay Is Arbitrary and Capricious

78. The agency's decision to override the CICA stay is arbitrary and capricious because the Army failed to consider important aspects of the problem, and also offered explanations for its decision that run counter to the evidence before the agency and are unsupported. *See Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Ala. Aircraft Indus., Inc.–Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009).

79. None of the four AFARS factors support an override of the CICA stay.

80. As to the first factor — consideration of whether significant adverse consequences necessarily will occur if the stay is not overridden — the D&F relies on generalized assertions that implementing the stay would "hinder" the agency and "disrupt" ICE's enforcement activities. However, the D&F fails to identify any specific disruption that will be so great or immediate as to cause "significant adverse consequences," particularly when considering the three-month delay caused by the government's cancelation of the earlier ICE procurement.

81. As to the second factor — whether reasonable alternatives to the override exist — the D&F concludes that the incumbent El Paso EHF facility is not a reasonable alternative because it is scheduled for closure once the new facility is up and running, and also because the capacity of that facility is supposedly too small. However, the El Paso EHF facility ███ ███ remains available for at least an additional seven months under the existing sole source contract, ███ ███

███

82. As to the third factor — the relative costs of implementing the stay versus proceeding with the override — the D&F states that the cost of implementing the stay will be $ ███ million, while the cost of an override will be $ ███ million. However, the Army provides no support for or breakdown of the $ ███ million figure.

83. As to the fourth factor — the impact of the override on competition and integrity of the procurement system — the D&F states that if GAO sustains Gemini's protest, the Army will "consider" GAO's decision. However, if there is no stay, the new facility will be fully built and operational by the time GAO decides the protest, and it is highly likely that the Army will disregard any GAO recommendation sustaining the protest at that point.

## ENTITLEMENT TO INJUNCTIVE RELIEF

84. Because the CICA stay is automatic and required by statute, there should be no need for injunctive relief, but Gemini meets the four factor test applicable to injunctive relief in any event.

85. Gemini is likely to succeed on the merits because, properly considered, each of the four AFARS factors weighs against an override of the stay.

86. Gemini will be irreparably harmed in the absence of an injunction because it will lose the opportunity to fairly compete, lose the opportunity to gain experience and grow its business, and suffer lost profits.

87. The balance of harms weighs in Gemini's favor because the agency has failed to identify any harm that would outweigh the irreparable harm to Gemini.

88. An injunction would serve the strong public interest of preserving the integrity of the procurement process.

13

## **PRAYER FOR RELIEF**

For all the reasons identified above, Gemini respectfully requests that this Court grant the following relief:

1. Issue the preliminary injunction sought in the accompanying Motion for a Preliminary Injunction.

2. Declare the government's override of the CICA stay to be arbitrary and capricious.

3. Enjoin the government from proceeding with performance under the awarded task order for the duration of Gemini's GAO protest, consistent with the required CICA stay.

4. Grant such other and further relief as the Court deems just and proper.

DATED: August 11, 2025

Respectfully submitted,

s/Jason A. Carey
JASON A. CAREY
*Counsel of Record*

*Of Counsel*:

Kayleigh M. Scalzo
J. Hunter Bennett
Jennifer K. Bentley
Evan Matsuda
Ethan Syster

Covington & Burling LLP
One CityCenter
850 Tenth St. NW
Washington, DC 20001
Telephone: (202) 662-5186
Fax: (202) 778-5186
Email: jcarey@cov.com

*Counsel for Gemini Tech Services, LLC*